UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:12-cv-335-KKC

BIRCHWOOD CONSERVANCY d/b/a
WORLD HERITAGE ANIMAL GENETIC
REPOSITORY INSTITUTE                                                                PLAINTIFF

VS                                         **OPINION & ORDER**

JEREMY WEBB, et al.                                                                 DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion filed by Plaintiff, Birchwood Conservancy d/b/a World Heritage Animal Genetic Repository Institute ("Birchwood"), for leave to file an amended complaint [DE #147]. This matter has been fully briefed and is now ripe for review.

I.      **Factual Background**

In its original complaint, Birchwood states that it operates a non-profit research facility in Georgetown, Kentucky [DE #1]. According to Birchwood, its facility is used for research in Animal Genetic Resource Biodiversity and it works with the United Nations Food and Agriculture Organization, the United Nations Environmental Programme, and Convention on Biological Diversity to aid developing nations and women farmer stakeholders build capacity through sustainable agriculture [*Id.*].

Birchwood alleges that on November 8, 2011, a herd of experimental goats escaped Birchwood's facility through a breach in the fence line and wandered onto Defendant Jeremy

Webb's neighboring farm [*Id*.]. Webb then called the Scott County Sheriff's Department and complained that his neighbor's goats had entered his property [*Id*.]. Defendant Sargent Ben Jones responded to the call and arrived at Webb's property [*Id*.]. Sgt. Jones confirmed that there were approximately 30 goats on Webb's property and, according to Birchwood, discussed with Webb "the legal issues of exterminating a couple of the goats as a deterrent to future instances of letting their animals run at large" [*Id*.]. Birchwood then alleges that, as Sgt. Jones was leaving the farm, he heard gunshots [*Id*.]. Upon returning to Webb, Sgt. Jones discovered that Webb had shot and killed two of the goats [*Id*.]. Webb does not deny that he shot the goats.

According to Birchwood, these two goats were no ordinary goats [*Id*.]. Rather, Birchwood alleges that the two goats killed by Webb were rare hybrid goats which were participants in the World Heritage Animal Genetic Repository global conservation initiative in collaboration with the United Nations Food and Agriculture Organization, Interlaken Declaration Global Plan of Action for Animal Genetic Resource Conservation [*Id*.].

Birchwood filed its complaint seeking to recover from Webb for breach of a duty "to refrain from inflicting wanton or willful injury" on the goats and for conversion [*Id*.]. Birchwood also sued Sgt. Jones under 42 U.S.C. § 1983, alleging that Sgt. Jones either gave his approval or encouraged Webb to shoot the goats and that, as a result, Birchwood was deprived of its property without due process [*Id*.]. Birchwood's complaint also seeks to recover against Tony Hampton, the Sheriff of Scott County, Kentucky, pursuant to KRS § 70.040 [*Id*].

Birchwood now seeks leave to file an amended complaint in order to (1) clarify that, by naming Scott County Sheriff Tony Hampton as a defendant, it intended to sue the Scott County

2

Sheriff's Office and not Tony Hampton in his individual capacity; and (2) to reflect a change in the amount of damages being sought.

## II. Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The grant or denial of a motion to amend is within the sound discretion of the Court. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). A district court should consider the following factors in ruling on a party's motion to amend: (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990). While delay alone ordinarily does not justify denial of leave to amend, at some point "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)(quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)).

However, notwithstanding Rule 15's liberal stance on amending pleadings, more than twenty years after *Foman*, Rule 16 of the Federal Rules of Civil Procedure was amended to add a provision restricting the timing of amendments. Rule 16 states in part that, after receiving the parties' Rule 26(f) report, the district court "must issue a scheduling order" that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16 (a), (b). Rule 16(b)(4) further provides that "[a] schedule may be modified only for

good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Rule is designed to ensure "that at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16(b), 1983 Advisory Committee Notes. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

Thus, when a motion to amend is filed before the time prescribed by the scheduling order, Rule 15(a) is the primary focus. When the motion to amend is filed after the scheduling order's deadline, however, a demonstration of good cause under Rule 16(b) is required before a court may consider if an amendment is proper under Rule 15(a). *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

### III. Analysis

**A. Clarification of the Capacity in Which Tony Hampton Has Been Sued**

Count IV of Birchwood's original complaint alleges that Tony Hampton is the Sheriff of Scott County, Kentucky and that, pursuant to KRS § 70.040, the sheriff is liable for all damages caused by one of his deputies [DE #1]. KRS § 70.040 states, in part, that "[t]he sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section." KRS § 70.040.

According to Birchwood, its intent was to sue the Scott County Sheriff's Office, and not Tony Hampton, individually. However, Defendants Sheriff Hampton and Jones have argued in a motion for summary judgment that Birchwood did not properly name the Office of the Scott County Sheriff and, accordingly, the case against Tony Hampton should be dismissed. For this

reason, Birchwood states that, out of an "abundance of caution," it seeks to amend its complaint to clearly name the "Office of the Scott County Sheriff" and contain counts against the "Office of the Scott County Sheriff" identical to those already contained in the original complaint against "Sheriff Tony Hampton."

Defendants Sheriff Hampton and Sgt. Jones respond only that this request to add a new party defendant is unreasonable and should be denied. To be sure, the Court is hesitant to permit amendments to a complaint intended to address arguments made in a pending motion for summary judgment. However, here, the complaint specifically alleges that the liability of Tony Hampton is predicated on KRS § 70.040, a statute that clearly imposes liability on the *office* of the sheriff, not the individual holder of that office. There are otherwise no other allegations regarding any conduct by Tony Hampton, individually. Additionally, Sheriff Hampton specifically filed his answer to Birchwood's complaint is his individual capacity *and* in his capacity as the Scott County Sheriff [DE #7]. Thus, despite Birchwood's delay in seeking to amend its complaint to clarify the capacity in which Tony Hampton has been sued, it could hardly be surprising or prejudicial to Defendants for the complaint to be against Tony Hampton in his official capacity as Sheriff.

In its motion, Birchwood makes clear that it did not intend to sue Tony Hampton individually and that its amended complaint simply substitutes the Scott County Sheriff's Office for Sheriff Tony Hampton in his individual capacity. The Court will hold Birchwood to this statement. For example, Birchwood claims in its motion that the counts contained in its amended complaint against the "Office of the Scott County Sheriff" are identical to those contained in its original complaint against Tony Hampton is not accurate. Count IV of the

amended complaint adds an allegation that "[t]he Defendant Jones was acting under color of law as Scott County Sheriff's Department deputy on November 8, 2011 when he failed to impound the goats found on the Webb property and told Webb that it was okay for Webb to shoot the goats" [DE #147-1 at ¶ 35]. This allegation goes well beyond simply adding a party and, at this late stage in the litigation, will not be permitted, as Birchwood has failed to show good cause for adding it.

Although Birchwood seeks to amend the language in its complaint to "clarify" the capacity in which Hampton has been sued, such an amendment is not necessary. Rather, the Court will construe the claims made against Hampton in Birchwood's original complaint as being made against Hampton in his official capacity as the Scott County Sheriff, rather than in his individual capacity. For these reasons, this portion of Birchwood's motion to amend will be denied. Moreover, based upon Birchwood's representations regarding the nature of its claims against Hampton, any claims made against Hampton in his individual capacity will be dismissed.

**B. Clarification of the Amount of Damages Sought by Birchwood**

Birchwood's original complaint alleges that, as the replacement value of each of the goats shot by Webb is $95,000.00, Birchwood has been damaged by Webb's actions by a minimum of $190,000.00 [DE #1 at ¶¶ 14, 18, 23]. Thus, Birchwood states that it seeks compensatory damages in excess of $190,000.00 under each count of its complaint [*Id.* at p. 6]. In its motion for leave to amend its complaint, Birchwood states that the replacement cost of $95,000.00 per goat was based on the cost to clone the goats. According to Birchwood, animal geneticists have been working to clone the two goats since the time of the shooting. However, Birchwood states that its representatives have recently (within the last two months) been informed by animal

6

geneticists that cloning has not been successful and that it is going to take much more in resources in order to get the program started again. Birchwood further states that, because of the setbacks caused by the deaths of the two male goats, Birchwood's donations have dried-up and it will have to start the program all over, requiring at least 8 years of work and costs. Thus, Birchwood states that the value of the loss of the goats is much higher than $95,000.00 per goat.

Birchwood argues that it was forced to comply with the one-year statute of limitations for filing its claims, but that it could not have known its true damages within one year of the incident. Birchwood further argues that amending the complaint to redact the liquidated amount of $190,000.00 in replacement value for the goats will not prejudice Defendants because Defendants' expert has stated that the value of the goats is $0.00 and because, at the time Birchwood's motion was filed, Defendants had not yet deposed any of Birchwood's experts that would have knowledge of the cloning of the goats or the value of the program. Thus, Birchwood argues that Defendants cannot claim to have lost an opportunity to examine a witness regarding the cloning or value or that doing so will cost additional time, hardship or money. Birchwood further argues that Defendants have been put on notice of the claimed increase in the replacement value of the goats via supplemental disclosures filed on April 24, 2014 by Birchwood.

Defendants strenuously object, pointing out that Birchwood's motion for leave to amend was filed well beyond the Scheduling Order's April 18, 2013 deadline to amend pleadings and that Birchwood has failed to show good cause to permit modification of its complaint at this late stage in the litigation. Defendants explain that the damages claims raised by Birchwood's original complaint and in related discovery have been limited to the $190,000.00 "replacement

cost" of the two goats; $25,000.00 in pain and suffering; and up to $1,000,000.00 in punitive damages claims. Although Birchwood's amended complaint is vague regarding the additional "compensatory damages claims" that it seeks to add, an expert rebuttal witness report of Dr. Michael Reed tendered by Birchwood on April 24, 2014 opines that the goat project would have "increased goat milk production by 0.5% in Africa creating a $6,500,000.00 per year loss projected over 8 years when the restarted program is completed and improved goat genetics are available" [DE #149, quoting DE #134-4 at p. 6]. Thus, the discounted damage claim advanced by Reed in his report is approximately $42,800,000.00. Defendants argue that they would be substantially prejudiced if Birchwood were permitted to amend its complaint to assert its new "compensatory damage claims," because, in order to address these new damages claims, all the Defendants would have to engage new experts and open additional factual discovery.

Birchwood's argument that its new damages claims would not require additional discovery is not well taken. As pointed out by Defendant Webb, in January 18, 2013, in response to Defendant's interrogatories, Plaintiff denied seeking any past or future lost profit and clearly listed the fair market value of the animals damaged or destroyed as $200,000.00 [DE #150-1 at p.2-3]. Aside from a reasonable attorney's fee, past and future medical expenses, and $500,000.00 punitive damages against Webb, Plaintiff stated that there were no other categories of specific damages [*Id.*]. The April 18, 2013 deadline to amend pleadings in the Court's scheduling order [DE #14] came and went without Birchwood seeking to amend its complaint. Indeed, apparently it was not until the April 24, 2014 rebuttal expert disclosure that Birchwood first raised the claim that its actual compensatory damages included a $6.5 million per year loss over 8 years to restart the program.

Defendants correctly point out that to permit Birchwood to pursue this expanded damages theory would increase the scope of discovery substantially, as Defendants would potentially be entitled take discovery on topics such as the status and success of the goat project when the goats were shot; the viability of the goats remaining in the program after the two goats were shot by Webb; the costs to restart the breeding program, including costs related to animal relocation, facilities, personnel and fundraising; and the accuracy of Birchwood's new claim that its goat project would have increased goat milk production by 0.5% in Africa. In addition, although Birchwood suggests that any prejudice would be alleviated because Defendants still have the opportunity to depose Birchwood's experts, Birchwood overlooks that parties are allowed to take discovery in many forms, including interrogatories and requests for admission. As the time for discovery is now closed, permitting Birchwood to so greatly expand the scope of the damages it seeks at such a late stage in the litigation would be unfair and unduly prejudicial to Defendants. *See Priddy v. Edelman*, 883 F.2d 438, 446-447 (6th Cir. 1989)("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint…Putting the defendants though the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.")(citations and quotations omitted).

Moreover, Birchwood fails to demonstrate good cause for any modification of the Scheduling Order to allow pursuit of its new damages theory. "[G]ood cause is measured by the movant's 'diligence in attempting to meet the case management order's requirements.'" *Leary*, 349 F.3d at 906 (quoting *Inge*, 281 F.3d at 625). Indeed, rather than demonstrate diligence by

9

immediately proposing an amended complaint, Birchwood first attempted to greatly expand the scope of its claimed damages via a rebuttal expert disclosure, and even this disclosure did not occur until over a year after the deadline to amend pleadings had expired.  Moreover, although Birchwood claims that it could not have discovered the true extent of its damages within one year of the incident, it provides no further explanation or support for this statement.  Even assuming the truth of Birchwood's claim that it could not have discovered that the loss of the two goats on November 8, 2011 would require it to restart its breeding program until April 24, 2014, it still offers no evidence that it was reasonably diligent in attempting to ascertain the extent of its damages during that time period or that there was some obstacle that precluded it from making that determination earlier.  In sum, Birchwood has failed to demonstrate that, despite its diligence, it could not have reasonably discovered the extent of its compensatory damages claim prior to the April 18, 2013 deadline to amend pleadings.

Thus, Birchwood has failed to show any good cause for their delay in filing this motion as required by Rule 16 of the Federal Rules of Civil Procedure.  Even if its motion were analyzed under the more liberal standards of Rule 15, the Court would deny Birchwood's motion due to the unexplained delay in bringing it, coupled with the lack of notice of Birchwood's expanded damages theory to Defendants and the certainty of undue prejudice to Defendants.  Accordingly, Birchwood's motion for leave to amend its complaint to revise its damages claim will be denied.

For all of the foregoing reasons, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

1. Plaintiff's motion for leave to file an amended complaint [DE #147] is **DENIED**;

2. Claims made in Plaintiff's original complaint [DE #1] against Tony Hampton **SHALL BE CONSTRUED** as being made against Tony Hampton, in his official capacity as the Scott County Sheriff;

3. All claims made against Tony Hampton in his individual capacity shall be **DISMISSED**.

Dated August 26, 2014.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY